WRIGHT v. STATE.

(In Banc. March 7, 1932.)

[139 So. 869. No. 29875.]

E. B. Todd, of Jackson, for appellant.

Herbert Nunnery, Assistant Attorney-General, for the state.

Ethridge, P. J., delivered the opinion of the court.

Charlie Wright, who was indicted for the murder of L. N. Ratliff, was tried therefor before a jury, convicted,

and sentenced to be hung; and from that decision this appeal was taken.

Wright killed Ratliff, a deputy sheriff, in the city of Jackson, while being brought from Liberty, in Amite county, as a prisoner; the former being an escaped convict. Mr. Hazlewood, another officer, was with Ratliff and the appellant in the car, Hazlewood being the driver. By some means Hazlewood's pistol slipped from his holster to the floor of the car. The appellant, who was handcuffed, on the rear seat with Ratliff, picked the pistol up, whereupon Ratliff grabbed him, and, in the scuffle over the pistol, it was fired, severely wounding Ratliff, from which wounds he died about nine days later. As the negro grabbed the pistol, Ratliff called to Hazlewood to help him, and about the time he called the shot was fired. Hazlewood turned the steering wheel loose, and, while he and Ratliff were trying to take the pistol from the appellant, who had it by the stock or handle, it was fired a time or two during the scuffle. In the scuffle Mr. Ratliff's pistol fell to the floor of the car, or at least the appellant secured possession of it. He then had a pistol in each hand, and a shot from one of them wounded Mr. Hazlewood in the finger. While this was going on, the car was still running, and ran into some posts and a tree; whereupon two persons nearby ran up, and, being unable to open the door of the car, broke it; one of the parties, laying a knife on appellant's neck, ordered him to desist or he would cut his head off. The appellant obeyed, and the pistols were taken from him. Mr. Ratliff, desperately wounded, was taken to the hospital, and some policemen who had arrived on the scene, in company with Hazlewood, took the appellant to the city jail. One of the policemen asked the appellant who shot Ratliff, who stated, "I did," and, on being asked why, replied that he did what any convict would do to get away—that they would all kill you. He also stated

that he was an escaped convict, from the Mississippi penitentiary, being sentence thereto for manslaughter.

The state's evidence does not develop how the officers came to be in possession of the appellant; merely shows that they were bringing him from jail in Amite county to Hinds county, to return him to the penitentiary. Mr. Hazlewood testified that as they came into Jackson on highway No. 51, on to South street; that they did not know where the new jail was situated, and, on asking which way to go, the appellant said, "Go straight a-head." The street they were traveling did not go to the jail, but led to the eastern part of the city, where it would be easier for the prisoner to make a get-away than would be the case in the heart of the city.

The appellant testified in his own behalf and denied the conversation testified to by the officers. He admitted that he was an escaped convict, and stated that he was arrested in Hammond, Louisiana, by Mr. Ratliff and Mr. Hazlewood; that they knew he was an escaped convict, and he knew they were after him, to arrest him; that he had been in constant fear of arrest, and desired to return to the penitentiary, and was rather glad that they had arrested him. He denied having intentionally fired the pistol, stating that when he saw it on the floor he picked it up with the intention of returning it to Mr. Hazlewood; but that, when Mr. Ratliff grabbed him, be became excited, and they had a struggle over the pistol—that he was only conscious of the pistol being discharged once. He denied telling the officers to keep straight ahead, but stated that he knew where the old jail was, though he did not know the location of the new jail, and that he was making no effort to escape; his purpose in picking up the pistol being to return it to the officers, to show them that he was not trying to do anything wrong—he thought it would help him when he returned to the penitentiary.

It is argued that the evidence is insufficient to constitute murder, and that it was error to convict the appellant of murder; the contention being that, at most, it would amount to manslaughter.

The first instruction given for the state announcing the verdicts that might be returned in the case in the usual form, giving the jury instructions as to the penalties and the right to fix life imprisonment, is complained of for this reason, and also the second instruction, which defines the crime of murder. These two are the only instructions given for the state.

In support of this contention it is argued that there is no showing that original arrest was lawful, or that the officers had any warrant or extradition papers, and that, as the evidence shows, the arrest was made in Louisiana, it was illegal without such papers, and the appellant would be entitled to escape, and, if he killed in effecting his escape, or in trying to do so, it would merely be manslaughter, relying upon the announcements of this court in Williams v. State, 127 Miss. 851, 90 So. 705.

It appears that the appellant was an escaped convict. It does not appear what process, if any, the officers had for his arrest; nor does it appear whether or not a requisition was applied for to the Louisiana authorities. The appellant being an escaped convict, sentenced for a felony, he could be arrested without a warrant; and, if he voluntarily came to Mississippi with the officers, as appears to be entirely probable from his testimony, no requisition would be required.

It appears, however, that he was in jail at Liberty the night preceding the killing. As the law requires a mittimus stating the authority for imprisonment, and no showing is made as to the circumstances, we must assume that he was in lawful custody. The appellant has nowhere shown that he was illegally arrested, or illegally committed. The presumption is that when killing

is done with a deadly weapon, the killing is malicious, and therefore murder; and, to reduce it from murder, the circumstances in justification or mitigation must appear from the evidence. The circumstances warranted the jury in believing that the appellant was guilty of murder.

The appellant assigns for error refusal of the following instruction: ''The court instructs the jury for the defendant that if you believe from the evidence in this case that the defendant did, on the spur of the moment, and without deliberation as to killing the deceased, secure possession of the pistol and in the struggle to escape fired the fatal shot, then the defendant is guilty of manslaughter and not murder.''

The court gave several instructions for the defendant which we think announced the principles favorable to his contentions on the subject. One of the instructions given the defendant reads as follows: ''The court instructs the jury for the defendant that if you believe from the evidence in this case that the defendant attempted to pick up a pistol from the floor of the automobile for the purpose of delivering it to Mr. Hazlewood, and that such attempt to pick up the pistol precipitated a struggle between the defendant, the deceased and another for possession of the weapon, and in which struggle the pistol was caused to be fired resulting in the death of the deceased, then you shall find the defendant guilty of manslaughter, as he is not guilty of murder.''

Another instruction reads as follows: ''The court instructs the jury for the defendant that if you believe from the evidence that the defendant did, without any design or deliberation to cause the death of the deceased, secure possession of the pistol, and in the struggle between the defendant, the deceased and another for possession of the pistol, the fatal shot was unintentionally fired, then the defendant is not guilty of murder.''

And another instruction, reads as follows: "The court instructs the jury for the defendant that if you believe from the evidence in this case that the defendant fired the shot which resulted in the death of the deceased, and you further believe from the evidence that the firing of the shot was not the wilful and deliberate act of defendant with intent to injure the deceased, then you shall find the defendant guilty of manslaughter."

These instructions are as favorable to the appellant as he was entitled to have given, and other instructions in his behalf announce the law fully as applied to his defense.

We are therefore unable to find any reversible error in the case, and the judgment will be affirmed, and Thursday, the 14th of April, 1932, will be fixed as the day of execution.

Affirmed.